[Civ. No. 13944. Third Dist. May 2, 1974.]

BERNS T. OLSON, Plaintiff and Appellant, v.
COUNTY OF SACRAMENTO, Defendant and Respondent.

## COUNSEL

Friedman, Collard & Kauffman and Raymond E. Ball for Plaintiff and Appellant.

Hardy, Erich & Brown and William A. Wilson, for Defendant and Respondent.

## OPINION

GOLDSTEIN, J.*—Plaintiff appeals from a judgment of dismissal, following a ruling that his cause of action is barred by the statute of limitations and sustaining, without leave to amend, a general demurrer of defendant County of Sacramento alleging that the complaint failed to state a cause of action.

### The Facts

Plaintiff, a civil service employee of Sacramento County, was dismissed on June 9, 1969, from his position by Dr. Irene Hickman, county assessor of that county, for failure to report to work. He appealed his dismissal to the civil service commission. The latter, after a hearing before a referee of the commission, sustained the action taken by the assessor. Thereafter, plaintiff petitioned the Superior Court of Sacramento County for a writ of mandate setting aside and annulling the order of dismissal. His petition was denied. He then appealed to this court from the ruling of the superior court. We reversed the earlier rulings and held that he had been discharged without just cause; that his dismissal should be annulled; that the action taken by the assessor was discriminatory and illegal; and that he should

*Retired judge of the superior court sitting under assignment by the Chairman of the Judicial Council.

be restored to his former position, with "such back salary as he may be entitled to by law."[1]

On June 2, 1972, 95 days after our decision was rendered, plaintiff filed a written claim for damages with the County of Sacramento alleging that his June 1969 dismissal resulted from negligence and/or intentional acts whereby he was caused emotional distress, pain and suffering resulting in the impairment of his health. On October 2, 1972, he filed the within action based on the allegations which were the subject of his claim.

Defendant County of Sacramento demurred generally to the complaint, alleging that it was barred by various statutes of limitations in both the Code of Civil Procedure and the Government Code. The trial court found that the action was barred by section 340 of the Code of Civil Procedure.[2]

### Contentions of the Parties

Both parties agree that if plaintiff's cause of action accrued on the date of our decision annulling his dismissal, his claim and action were timely filed. County of Sacramento, however, contends that plaintiff's cause of action accrued approximately three years previously, to wit: on the date of his dismissal.

### The Issue Presented

■ The issue is thus sharply drawn. When did plaintiff's cause of action accrue, or conversely: Were the applicable statutes of limitations tolled until the final determination of the former action in this court on February 28, 1972?

### The Law

The proliferation of administrative proceedings during the past quarter-century, particularly those having a bearing on or collateral to the assertion of independent legal rights, has had an unmistakable impact on previous rulings as to the accrual date of causes of action. This, in turn, has given rise to the related question as to when statutes of limitations in such actions

---

[1]Our unpublished decision was rendered on February 28, 1972, in case No. 3 Civil 12982 entitled "Berns T. Olson, Plaintiff and Appellant v. The Sacramento County Assessor and the Sacramento County Civil Service Commission, Defendants and Respondents."

[2]The reference to section 340 of the Code of Civil Procedure is in error. Section 340 is a one-year statute of limitations. It applies generally to actions for injury "caused by the wrongful act or neglect of another." This case is governed by the provisions of section 342 of the Code of Civil Procedure, which applies to actions against public entities. Such actions must be commenced within six months after the claim is acted upon by the board or is deemed to have been rejected. (Gov. Code, § 945.6.)

begin to run or, conversely, are tolled. In each case, the answer depends on the interrelationship between the administrative proceeding and the independent cause of action. No comprehensive general rule has thus far emerged, the problem being dealt with on a case-to-case basis. We discuss four of these cases hereinafter, as guidelines in the case at bench.

In *Lee C. Hess Co.* v. *City of Susanville* (1959) 176 Cal.App.2d 594 [1 Cal.Rptr. 586], the defendant had wrongfully cancelled a construction contract previously awarded to one Hess on the ground that he was not properly licensed to perform the work thereunder. The contract was then awarded to a competitor named Katsaros. The city then filed suit against Hess to invalidate his contract and to validate the award of the contract to Katsaros. Hess prevailed on a cross-complaint in which he sought validation of his contract. Hess later filed suit against the City of Susanville for damages resulting from the increase in construction costs during the four-year period required for the resolution of the city's validation suit. One of the questions discussed in the decision was whether Hess's action was barred by the statute of limitations. As to this, the court stated at page 598: "The action was not barred by the statute of limitations. The running of the statute of limitations was suspended during the pendency of *the validation proceedings*, hence appellant *had no cause of action until it was finally judicially determined that respondent had wrongfully breached its contract.* [Citation.]" (Italics added.)

In *Dillon* v. *Board of Pension Commrs.* (1941) 18 Cal.2d 427 [116 P.2d 37, 136 A.L.R. 800], plaintiff, the widow of an employee of the City of Los Angeles, became entitled to pension rights upon his death. A question arose as to when her cause of action for pension payments arose, and whether the statute of limitations was a bar thereto.

The Los Angeles City Charter required that an application be made to the board of pension commissioners before court action could be taken on the pension claim. Plaintiff, in compliance with the foregoing provision, filed a claim with the board. It was rejected. More than three years after such rejection she instituted suit for the pension. The court held that although her action was barred by the three-year statute of limitations (Code Civ. Proc., § 338), nevertheless the statute of limitations *was tolled while her claim was under consideration by the board.* The court stated at pages 430-431: "Since, however, action by the board must precede court proceedings to obtain a pension, a claimant who has applied to the board cannot sue for the pension while the claim is under consideration by the board. It is well recognized that the running of the statute of limitations is

*suspended during any period in which the plaintiff is legally prevented from taking action to protect his rights.*" (Italics added.)

This brings us to the leading case of *Lerner v. Los Angeles City Board of Education* (1963) 59 Cal.2d 382 [29 Cal.Rptr. 657, 380 P.2d 97], in which both *Hess* and *Dillon, supra,* are cited with approval.

Lerner entered a plea of guilty to a misdemeanor morals offense on July 15, 1948. He was placed on probation and fined. In January 1949, after the successful completion of his probation, he was permitted to withdraw his former plea of guilty and enter a not guilty plea and the case was dismissed pursuant to section 1203.4 of the Penal Code.

In September 1948, while he was still on probation, Lerner obtained employment with the Los Angeles City Board of Education as a probationary teacher. His tenure became permanent in 1950. In 1954, the State Board of Education became aware, for the first time, of his conviction of a morals offense prior to his employment as a teacher. Acting on the authority of section 12756 of the Education Code (as then enacted) the state board, without prior notice, revoked his teaching credential. Four days later he was dismissed by the Los Angeles City Board of Education from his position as a teacher on the ground that he no longer held a teaching credential.

Lerner took no legal action for the restoration of his credential. He did make personal appeals for assistance in getting his credential restored to the Attorney General and the Governor, without success. In 1958, the decision was rendered in *Fountain v. State Board of Education,* 157 Cal.App. 2d 463 [320 P.2d 899] (hg. den.). The court there held in a case involving basic facts identical with those in *Lerner* that the action taken by the board in revoking a teaching credential based on the retrospective operation of a morals conviction was invalid. In December 1968, Lerner sued the Los Angeles City Board of Education for restoration to his former position. The board interposed the statute of limitations as a defense. It contended that his cause of action accrued immediately upon his wrongful dismissal, and that, like Fountain, upon his discharge he could have petitioned by writ of mandate for restoration to his former position. The court rejected the board's contention, stating at page 391: "Since Lerner's cause of action against the city board could not have accrued unless and until the state board restored his credential, *such favorable action of the state board constituted a condition precedent to effective action against the city board.* A writ of mandate against the city board could not, of course, have issued to command the reinstatement of Lerner until the state board granted his credential. (*California Highway Com. v. Riley* (1923) 192 Cal. 97, 112 . . . . .)" (Italics added.)

The court additionally pointed out at page 390: "Thus, when the state board reinstated Lerner's credential as though never revoked, the state board removed the basis for the city board's termination of his employment; the city board in turn became obligated to reinstate him. (*Matteson* v. *State Board of Education* (1943) 57 Cal.App.2d 991 . . . .)"

It will be noted that Lerner took no steps to test the legality of his dismissal. In the case at bench, on the contrary, plaintiff actively pursued every available prescribed administrative and legal remedy to obtain the annulment of his dismissal.

In *A. Teichert & Son, Inc.* v. *State of Cal.* (1965) 238 Cal.App.2d 736 [48 Cal.Rptr. 225], the plaintiff had entered into a highway construction contract with the defendant. A dispute arose as to whether the plaintiff was entitled to payment for extras claimed to have been incurred in the performance of the work. In accordance with the provisions of the State Contract Act which were incorporated in the contract by reference, the dispute was referred to the State Contract Board for settlement. The settlement negotiations proved fruitless. Teichert then instituted suit on its claim. The state demurred, alleging that the suit was barred by the statute of limitations. Teichert answered that its cause of action did not accrue until the settlement negotiations were concluded.

Although we held that settlement negotiations were not expressly made a condition precedent to the filing of suit by the statute, we found that it was made so "by implication."

In reversing the ruling of the trial court sustaining the demurrer without leave to amend, we held at page 746: *"A basic doctrine of law demands exhaustion of a party's administrative remedies before he files suit, even though no statute makes it a condition of his right to sue."* (Italics added.)

In the case at bench, the gravamen of plaintiff's cause of action was tortious conduct on the part of defendants. The basis of plaintiff's claim was the wrongfulness of his discharge. Obviously, if it was lawful, so long as the order of discharge and the findings, decision and rulings of the civil service commission and the trial court remained undisturbed and had not been set aside or annulled, any emotional, mental, or physical pain and anguish consequential thereto were not compensable. They constituted an insuperable barrier to the successful prosecution of plaintiff's claim for damages.

The foregoing conclusion finds ample support in section 45A, subdivision (7), of the Sacramento County Charter and sections 11.4, 11.5, 11.8 and 11.11 of the Rules of the Sacramento County Civil Service Commis-

sion. We take judicial notice of the charter and the rules adopted by the civil service commission of that county pursuant to the authority granted to it by that charter. (*Agostini* v. *Strycula* (1965) 231 Cal.App.2d 804, 806 [42 Cal.Rptr. 314]; Evid. Code, § 452, subd. (h).)

Section 45A, subdivision (7), of the charter authorizes the appointing authority (in this case the county assessor) to remove, for cause, an employee in his department. The order of removal with a statement of the reasons therefor must be filed with the civil service commission.

Section 11.4 of the Civil Service Rules authorizes the dismissed employee to file with the commission his answer to the order of dismissal, in writing. If he fails so to do, the provisions of section 11.8 of the rule become applicable. The pertinent portions of that section provide: "*Failure on the part of an accused employee to file an answer within the time* allowed in 11.4 of these rules *shall be construed as an admission of the truth of the charges made against him* and *judgment against said employee shall be entered forthwith* and filed by the Commission." (Italics added.)

Section 11.5 of the rules permits the discharged employee to appeal to the civil service commission from the order of dismissal and to a hearing before the commission or a referee thereof. Section 11.11 of the rules declares that: "*The finding and decision of the Commission shall be final and* shall be certified to the official from whose order the appeal is taken, and *shall forthwith be enforced and followed by him.*" (Italics added.)

It is clear that had plaintiff not exhausted the administrative remedies and the writ of mandate proceedings which finally culminated in our decision restoring him to his former position, his dismissal would have become final and conclusive and a permanent bar to the assertion by him of any rights flowing from his wrongful discharge. The condition precedent to this action was our finding of wrongful conduct on the part of the defendants.

The rule in malicious prosecution cases furnishes a parallel for the case before us. In such cases, it is only when the plaintiff is exonerated of the charge filed against him that his cause of action accrues. It is a condition precedent to both the pleading and the proof of his case.

Defendant urges that the rule applicable to cases of false arrest and imprisonment should be applied here. The distinction between such cases and the case before us is clear. In false arrest and imprisonment actions, the plaintiff need neither allege nor prove the favorable termination of the action, lack of probable cause or malice. The cause of action accrues immediately upon the commission of the wrongful act. The tort is complete at the moment of the arrest. The right of action is not affected by the outcome

of criminal proceedings following the arrest. Witkin, in 3 California Procedure (2d ed. 1971), states in section 621, page 2254: "The tort of false imprisonment consists of unlawful restraint or confinement, and the cause of action arises immediately upon the commission of the wrongful act. The pleading requirements are quite different from those in malicious prosecution actions: The plaintiff need not allege favorable termination of a criminal prosecution, lack of probable cause, or malice."

In *Collins* v. *Owens* (1947) 77 Cal.App.2d 713, 715 [176 P.2d 372], the court pointed out that all that need be pleaded in false arrest and imprisonment actions is "the arrest without process, the imprisonment and the damage."

Here, it was necessary for plaintiff to prove his wrongful dismissal. Until that could be shown, he had no case. It was not until our decision of February 28, 1972, became final, that he could either plead or prove that essential fact.

The county contends that plaintiff could have concurrently contested the administrative order of dismissal and prosecuted his legal action for damages. Assuming, *arguendo*, that both such courses were available to plaintiff, there are sound legal and practical policy considerations against such a practice.

The judicial policy underlying the decisions which toll statutes of limitations during the pendency of interrelated administrative proceedings in cases where the latter may be dispositive of an essential element of a legal cause of action is founded on the need for harmony and the avoidance of chaos in the administration of justice. It avoids a multiplicity of actions in cases having common elements of law or fact *or both*. It does not pressure litigants concurrently to seek redress in two separate forums with the attendant danger of conflicting decisions on the same issue. It relieves litigants of the pressure to outrace each other in seeking an adjudication of one or the other of the legal proceedings in a forum where he may believe he has a greater chance of prevailing. The orderly administration of justice is best served by tolling the statute of limitations on independent actions at law until the final determination of the interrelated administrative proceeding.

The judgment is reversed.

Richardson, P. J., and Friedman, J., concurred.