[No. H004388. Sixth Dist. Sept. 29, 1989.]

DALE RANDALL GOEBEL, Plaintiff and Appellant, v.
JAMES LAUDERDALE, Defendant and Respondent.

**COUNSEL**

John P. Hannon II for Plaintiff and Appellant.

Gassett, Perry & Frank, John S. Burton and Thomas P. Dwyer for Defendant and Respondent.

## Opinion

**ELIA, J.**—Appellant Dale Randall Goebel filed suit against respondent James Lauderdale for attorney malpractice. The trial court granted respondent's motion for nonsuit on the grounds that the action was barred by the one-year statute of limitations and because appellant did not establish a prima facie case of negligence. We conclude that the trial court erred in granting the motion for nonsuit on the issue of respondent's negligence, and erred in granting the nonsuit based on the running of the statute of limitations.

### Factual and Procedural Background

Appellant is a general contractor. In May 1984, after appellant began having financial difficulties, he sought bankruptcy advice from respondent, an attorney. Although respondent is a bankruptcy specialist, he also handles other legal matters, including criminal cases. When appellant and respondent met, they discussed appellant's debts. Appellant ultimately decided to attempt to work his way out of his debts.

Appellant's financial situation worsened. Accordingly, in September 1984, he again sought respondent's advice. Appellant gave respondent various documents and bills and respondent explained the different types of bankruptcy. After deciding on a chapter seven bankruptcy, respondent asked appellant if anyone owed appellant money. Appellant claimed he was owed $15,000 for a project on which he was currently working. On the advice of respondent, appellant collected the $15,000 and stopped work on the project.

Neither appellant nor respondent was aware of Penal Code section 484b which states that where a person receives money on a construction contract for the purpose of obtaining or paying for services, labor, materials or equipment, he must apply that money on the contract. Should the money be diverted and the job not completed or the bills not paid then the contractor is guilty of a felony. Apparently, the $15,000 payment that appellant collected was not actually owed to him; much of the money was owed to the men who furnished the materials and labor on the project.

On October 5, 1984, a petition for bankruptcy was filed. Subsequently, respondent and appellant were contacted by the Pacific Grove Police Department regarding the fact that appellant was under investigation for diversion of funds. In January 1985, respondent no longer represented appellant and referred him to another bankruptcy attorney.

Appellant was arrested in March or April of 1985 and he retained a criminal lawyer at that time. On January 28, 1986, appellant was convicted of two counts of diversion of funds and on March 3, 1986, appellant was sentenced.[1]

Appellant filed this legal malpractice action against respondent on June 13, 1986, asserting that respondent failed to exercise reasonable care and skill in undertaking to perform legal services and in negligently failing to research relevant law, including Penal Code section 484b, before filing a chapter seven bankruptcy petition. On October 8, 1986, an answer was filed raising the affirmative defense of the statute of limitations under Code of Civil Procedure section 340.6.

An attorney, Kevin Cholakian, testified at trial as an expert witness. Because Cholakian was not an expert in bankruptcy law, the court would not permit him to testify regarding the duties of a bankruptcy attorney. Cholakian testified to the duties of attorneys in general.

After appellant presented his case, respondent moved for a nonsuit on the grounds that the action was barred by the one-year statute of limitations (Code Civ. Proc., § 340.6) and because the expert testimony failed to establish respondent's negligence. The motion was granted on both counts.

■ Since this appeal is from a judgment of nonsuit we must give to appellant's evidence all the value to which it is legally entitled, must recognize every legitimate inference that may be drawn from that evidence, and must disregard conflicting evidence. (*Connor* v. *Great Western Sav. & Loan Assn.* (1968) 69 Cal.2d 850, 857 [73 Cal.Rptr. 369, 447 P.2d 609, 39 A.L.R.3d 224]; *Raber* v. *Tumin* (1951) 36 Cal.2d 654, 656 [226 P.2d 574].)

DISCUSSION

I.   Statute of Limitations

Appellant contends that the present action is not barred by the statute of limitations because the statute did not start to run until January 28, 1986— the date of appellant's conviction. We agree.

The statute of limitations for attorney malpractice is set forth in California Code of Civil Procedure section 340.6, which states in pertinent part:

---

[1] As requested by appellant, we take judicial notice of appellant's conviction date and sentencing date pursuant to our order entered on September 26, 1989.

"(a) An action against an attorney for a wrongful act or omission, other than for actual fraud, arising in the performance of professional services shall be commenced within one year after the plaintiff discovers, or through the use of reasonable diligence should have discovered, the facts constituting the wrongful act or omission, or four years from the date of the wrongful act or omission, whichever occurs first. In no event shall the time for commencement of legal action exceed four years except that the period shall be tolled during the time that any of the following exist: [¶] (1) The plaintiff has not sustained actual injury; [¶] (2) The attorney continues to represent the plaintiff regarding the specific subject matter in which the alleged wrongful act or omission occurred; [¶] (3) . . . [¶] (4) The plaintiff is under a legal or physical disability which restricts the plaintiff's ability to commence legal action."

▋ The statute of limitations in a legal malpractice action does not begin to run simply when the client knows, or should know, of the attorney's negligence. The client must also sustain actual and appreciable harm. (*Budd* v. *Nixen* (1971) 6 Cal.3d 195, 200 [98 Cal.Rptr. 849, 491 P.2d 433]; *Robinson* v. *McGinn* (1987) 195 Cal.App.3d 66, 73 [240 Cal.Rptr. 423].) Harm is actual and appreciable when it becomes "irremediable." (*Robinson* v. *McGinn, supra,* 195 Cal.App.3d at p. 72.) Irremediable "means something which is impossible to remedy; something which is lost, or incorrigible." (*Robinson* v. *McGinn, supra,* 195 Cal.App.3d at p. 74.)

▋ Viewing the evidence in the light most favorable to appellant, we believe that appellant sustained irremediable harm when he was convicted on January 28, 1986. (*In re Easterbrook* (1988) 200 Cal.App.3d 1541, 1544 [244 Cal.Rptr. 652].) Until that time, no actual harm was suffered as a result of respondent's alleged negligence. " '[I]t is black-letter law that damages may not be based upon sheer speculation or surmise, and the mere possibility or even probability that damages will result from wrongful conduct does not render it actionable." [Citations omitted.] (*Robinson* v. *McGinn, supra,* 195 Cal.App.3d at p. 73 quoting *Ventura County Humane Society* v. *Holloway* (1974) 40 Cal.App.3d 897, 907 [115 Cal.Rptr. 464].) If appellant had been acquitted, he would have suffered no actual harm as a result of respondent's alleged negligence.

This case is similar to *In re Easterbrook, supra,* 200 Cal.App.3d 1541 where the court concluded that an action for attorney malpractice did not accrue until a verdict had been rendered in the client's criminal case. In that case, the court stressed that "there has been no verdict in the criminal case and [the client] has, at most, suffered only speculative harm which does not suffice to create a cause of action for negligence." (*Id.* at p. 1544.) Similarly, in *Robinson* v. *McGinn, supra,* 195 Cal.App.3d 66, the court held that the

statute of limitations for legal malpractice did not begin to run until the client had exhausted his administrative remedies.

It is our view that the damage to appellant because of respondent's alleged error became irremediable on January 28, 1986. Appellant filed his complaint on June 13, 1986, well within the one-year statute of limitations.

## II. Expert Testimony on Negligence

Appellant contends that the trial court erred in granting a nonsuit on the issue of whether there existed a prima facie case of negligence liability. We agree.

■ Generally, the attorney-client relationship imposes upon the lawyer the obligation to represent his client with " 'such skill, prudence, and diligence as lawyers of ordinary skill and capacity commonly possess and exercise in the performance of the tasks which they undertake.' " [Citations omitted.] (*Kirsch* v. *Duryea* (1978) 21 Cal.3d 303, 308 [146 Cal.Rptr. 218, 578 P.2d 935, 6 A.L.R.4th 334].) The standard is that of members of the profession "in the same or similar locality under similar circumstance." (See *Smith* v. *Lewis* (1975) 13 Cal.3d 349, 355 fn. 3, 360 [118 Cal.Rptr. 621, 530 P.2d 589, 78 A.L.R.3d 231], approving jury instructions to that effect). This includes a duty to "discover those additional rules of law which, although not commonly known, may readily be found by standard research techniques." [Citations omitted.] (*Smith* v. *Lewis, supra,* 13 Cal.3d at p. 358.)

■ Where a malpractice action is brought against an attorney holding himself out as a legal specialist and the claim against the attorney relates to his expertise, then only a person knowledgeable in the specialty can define the applicable duty of care and render an opinion on whether it was met. (*Wright* v. *Williams* (1975) 47 Cal.App.3d 802, 810-811 [121 Cal.Rptr. 194].) However, "[w]here the failure of attorney performance is so clear that a trier of fact may find professional negligence unassisted by expert testimony, then expert testimony is not required." (*Wilkinson* v. *Rives* (1981) 116 Cal.App.3d 641, 647-648 [172 Cal.Rptr. 254]; see also *Wright* v. *Williams, supra,* 47 Cal.App.3d at p. 811.) In other words, if the attorney's negligence is readily apparent from the facts of the case, then the testimony of an expert may not be necessary.

■ This is such a case. Although Cholakian was not a bankruptcy expert, we believe that respondent's negligence was so clear that the testimony of a bankruptcy expert was not needed. Respondent's conduct demonstrates a total failure to perform even the most perfunctory research.

Knowledge of what the Penal Code prohibits is easily discovered through standard research techniques. Knowing appellant was a general contractor, respondent only had to check the Penal Code to discover section 484b.

In addition, one does not need the testimony of a bankruptcy specialist to establish that it is below the standard of care to advise a client to violate the Penal Code. Respondent's failure did not arise because of carelessness in discovering bankruptcy law; it arose because he did not know what the Penal Code prohibited. Moreover, this is not a case where the law was unsettled or where strategic or tactical concerns prompted the attorney's advice. As stated in *Pineda* v. *Craven* (9th Cir. 1970) 424 F.2d 369, 372, "There is nothing strategic or tactical about ignorance, . . ."

Quite simply, respondent advised his client to break the law. We see no problem in concluding that, as a matter of law, such conduct markedly departs from the skill and diligence attorneys commonly possess. (*Kirsch* v. *Duryea, supra,* 21 Cal.3d at p. 308.) Accordingly, we conclude that the trial court erred in granting the motion for nonsuit on the issue of respondent's negligence.

The judgment is reversed.

Capaccioli, Acting P. J., and Premo, J., concurred.

Respondent's petiton for review by the Supreme Court was denied January 17, 1990.