[No. B054536. Second Dist., Div. Seven. May 19, 1992.]

STANLEY SIROTT, Plaintiff and Appellant, v.
LEATRICE LYNNE LATTS et al., Defendants and Respondents.

COUNSEL

Thielen & Burke and Joseph E. Thielen for Plaintiff and Appellant.

Haight, Brown & Bonesteel, Roy G. Weatherup and Rita Gunasekaran for Defendants and Respondents.

OPINION

LILLIE, P. J.— ▄▄▄ ▬▬▄ Plaintiff, Stanley Sirott, M.D., appeals from judgment dismissing his action for legal malpractice as to defendants Leatrice Latts and Latts & Herstead after their general demurrer to the first amended complaint was sustained without leave to amend on the ground the action is barred by limitations.[1]

FACTS

The action was commenced January 31, 1990.

Limited to material facts, and without its contentions, deductions and conclusions of fact or law (see *Serrano* v. *Priest* (1971) 5 Cal.3d 584, 591 [96 Cal.Rptr. 601, 487 P.2d 1241, 41 A.L.R.3d 1187]), the first amended complaint alleged: In July 1986 plaintiff, a physician and surgeon, decided to retire from the practice of medicine. In October 1986 plaintiff sought advice from defendants regarding the purchase of "tail" insurance coverage for medical malpractice through his medical malpractice insurance carrier, Cooperative of American Physicians Mutual Protection Trust (the insurer). Defendants advised plaintiff that the $50,000 premium for tail coverage demanded by the insurer was an unconstitutional and unenforceable form of age discrimination and that plaintiff need not pay the premium. Thereafter,

---

[1] Defendant John Herstead did not demur to the first amended complaint and the action presumably is still pending as to him. The judgment of dismissal nevertheless is appealable because it left no issues to be determined between plaintiff and the demurring defendants. (*Buckaloo* v. *Johnson* (1975) 14 Cal.3d 815, 821, fn. 3 [122 Cal.Rptr. 745, 537 P.2d 865].)

While the notice of appeal was filed before rendition of the judgment, we treat the notice as filed immediately after entry of the judgment. (Cal. Rules of Court, rule 2(c).)

plaintiff was sued for medical malpractice. In advising plaintiff not to pay the premium for tail medical malpractice insurance coverage, defendants rendered substandard legal services to plaintiff. Had plaintiff purchased the insurance which was the subject of the legal advice given by defendants, he would have had full coverage for defense and indemnity costs in the medical malpractice action.

It was further alleged: Defendants attempted without success to reinstate plaintiff's tail coverage and obtain an adjudication that the insurer's requirement of a premium for such coverage was an unconstitutional form of age discrimination. Consequently, plaintiff was required to retain counsel to defend the medical malpractice action at his own expense. Such expense did not exceed the $50,000 premium plaintiff would have been required to pay had he not followed defendants' advice. On January 3, 1990, at a mandatory settlement conference in the medical malpractice action, plaintiff's counsel advised him to pay $230,000 to settle the action; plaintiff paid said sum on January 11, 1990. As a result of defendants' professional negligence plaintiff sustained damages of $230,000.

Defendants Leatrice Latts and Latts & Herstead demurred generally to the first amended complaint on the ground the action is barred by the statute of limitations for legal malpractice (Code Civ. Proc., § 340.6). In conjunction with the demurrer defendants requested that the trial court take judicial notice of its records (Evid. Code, §§ 452, subd. (d), 453) in the medical malpractice action against plaintiff (Gallo v. Sirott (Super. Ct. L.A. County) No. NEC-46422) and an arbitration proceeding by the insurer against plaintiff (Cooperative of American Physicians, Inc. v. Sirott (Super. Ct. L.A. County) No. C-662326). Such records showed: In the medical malpractice action a demurrer to the complaint was filed on behalf of Dr. Sirott by his counsel on January 20, 1987. In the arbitration proceeding, on August 7, 1987, an award was rendered which determined that Dr. Sirott was not entitled to rescind his decision to be responsible for his own tail coverage and the insurer had no obligation to defend or indemnify Dr. Sirott in the medical malpractice action. On January 7, 1988, judgment was entered confirming the award.

Defendants argued that plaintiff suffered actual injury from defendants' alleged negligence, within the meaning of Code of Civil Procedure section 340.6, both by incurring legal fees to defend the medical malpractice action and by losing his right to insurance coverage. Inasmuch as both events occurred more than one year before the instant legal malpractice action was filed, that action is barred by section 340.6.

The demurrer was sustained without leave to amend and the action dismissed as to the demurring defendants. Plaintiff appeals from the judgment of dismissal.

## DISCUSSION

Under Code of Civil Procedure section 340.6, the one-year statute of limitations for legal malpractice does not begin to run simply when the plaintiff knows, or should know, of the attorney's negligence; the plaintiff also must sustain actual and appreciable harm.[2] (*Goebel* v. *Lauderdale* (1989) 214 Cal.App.3d 1502, 1507 [263 Cal.Rptr. 275].) As our Supreme Court explained in *Budd* v. *Nixen* (1971) 6 Cal.3d 195 [98 Cal.Rptr. 849, 491 P.2d 433]: "If the allegedly negligent conduct does not cause damage, it generates no cause of action in tort. [Citation.] The mere breach of a professional duty, causing only nominal damages, speculative harm, or the threat of future harm—not yet realized—does not suffice to create a cause of action for negligence. [Citations.] Hence, until the client suffers appreciable harm as a consequence of his attorney's negligence, the client cannot establish a cause of action for malpractice." (*Id.*, at p. 200, fn. omitted.)

A complaint showing on its face the cause of action is barred by the statute of limitations is subject to demurrer. (*Jessica H.* v. *Allstate Ins. Co.* (1984) 155 Cal.App.3d 590, 592 [202 Cal.Rptr. 239].) In determining the sufficiency of a complaint against a demurrer, the court reads the complaint as including matters subject to judicial notice. (*Gilbert* v. *State of California* (1990) 218 Cal.App.3d 234, 240-241 [266 Cal.Rptr. 891]; Code Civ. Proc., §§ 430.30, 430.70.) So read, the first amended complaint alleged: Defendants negligently advised plaintiff that he did not have to pay the insurer a premium for tail medical malpractice coverage. Plaintiff followed that advice. Thereafter, he was sued for medical malpractice and retained counsel to represent him in that action at his own expense. Attorney fees for such representation were incurred, at the latest, on January 20, 1987, when counsel for plaintiff filed a demurrer to the medical malpractice complaint on his behalf. On August 7, 1987, an arbitration award was rendered which determined that the insurer was not obligated to defend or indemnify plaintiff in the medical malpractice action. On January 7, 1988, judgment was entered confirming the award. On January 11, 1990, plaintiff paid $230,000 to settle the medical malpractice action.

A client suffers damage when he is compelled, as a result of the attorney's error, to incur or pay attorney fees. (*Budd* v. *Nixen, supra*, 6 Cal.3d

---

[2]Code of Civil Procedure section 340.6 provides in pertinent part: "(a) An action against an attorney for a wrongful act or omission, other than for actual fraud, arising in the performance of professional services shall be commenced within one year after the plaintiff discovers, or through the use of reasonable diligence should have discovered, the facts constituting the wrongful act or omission, or four years from the date of the wrongful act or omission, whichever occurs first. In no event shall the time for commencement of legal action exceed four years except that the period shall be tolled during the time that any of the following exist: [¶] (1) The plaintiff has not sustained actual injury; . . ."

at pp. 201-202.) ■ Plaintiff incurred attorney fees in defending the medical malpractice action not later than January 20, 1987, when his counsel filed a demurrer on his behalf. Plaintiff contends his liability for attorney fees did not constitute actual harm to him because, as alleged in the first amended complaint, such fees did not exceed the $50,000 premium plaintiff would have been required to pay had he not followed defendants' advice. Plaintiff cites no authority for the proposition that injury suffered by the client may be negated in this manner—a form of offset—for purposes of determining when the statute of limitations for legal malpractice begins to run. We reject plaintiff's novel and unsupported argument. In any event, the complaint shows on its face that plaintiff suffered damage in another form more than one year before the present action was commenced.

Defendants' attempt to reinstate plaintiff's tail malpractice insurance coverage ended in failure on August 7, 1987, when an arbitration award was rendered which determined that plaintiff could not rescind his decision to be responsible for his own tail coverage and the insurer was not obligated to defend or indemnify him in the medical malpractice action. The award was confirmed by judgment entered January 7, 1988. On that date plaintiff suffered actual damage by the irretrievable loss of the right to tail medical malpractice insurance coverage—the very purpose for which plaintiff consulted defendants and the subject of their allegedly negligent advice. (See *Johnson* v. *Simonelli* (1991) 231 Cal.App.3d 105, 110 [282 Cal.Rptr. 205].) For purposes of section 340.6, actual damage need not be defined in terms of monetary amount. (*Laird* v. *Blacker* (1992) 2 Cal.4th 606, 614 [7 Cal.Rptr.2d 550, 828 P.2d 691].) "[T]he Legislature used the term 'actual' to focus on the *fact* that damage occurred, and eliminated all qualifiers to prevent confusion that would arise by requiring courts to consider the total amount of damages." (*Id.*, at p. 613, original italics.)

Plaintiff contends the harm he sustained on account of defendants' alleged negligence did not become irremediable until January 3, 1990, when he agreed to pay $230,000 to settle the medical malpractice action. Before that date, plaintiff argues, his liability for medical negligence was speculative and he could have prevailed in the action, with the result that he would not have been harmed by defendants' negligent advice. In *Laird* v. *Blacker*, *supra*, 2 Cal.4th 606, our Supreme Court rejected the requirement, judicially grafted onto Code of Civil Procedure section 340.6, that damage must be irremediable as well as actual before the statute of limitations for legal malpractice begins to run.

Plaintiff sustained actual damage as a result of defendants' alleged negligence upon entry of judgment confirming the arbitration award (Jan. 7, 1988) because at that point it was judicially determined that plaintiff was not

entitled to tail malpractice insurance coverage, and he was compelled to pay the expenses of defending the medical malpractice action regardless of the outcome of that action. Accordingly, the one-year statute of limitations for legal malpractice commenced to run on January 7, 1988.

This result is not changed by the fact that plaintiff suffered additional damage from defendants' negligence when, on January 11, 1990, he paid $230,000 to settle the medical malpractice action. ▮ "The cause of action [for legal malpractice] arises . . . before the client sustains all, or even the greater part, of the damages occasioned by his attorney's negligence. [Citations.] Any appreciable and actual harm flowing from the attorney's negligent conduct establishes a cause of action upon which the client may sue. [¶] Indeed, once having discovered his attorney's negligence and having suffered some damage, the client must institute his action within the time prescribed in the statute of limitations or he will be barred from thereafter complaining of his attorney's conduct."[3] (*Budd v. Nixen, supra* 6 Cal.3d 195, 201.)

▮ The demurrer to the first amended complaint was properly sustained. The only remaining question is whether the trial court abused its discretion in denying leave to amend. (See Code Civ. Proc., § 472c.) ▮ An order sustaining a demurrer without leave to amend constitutes an abuse of discretion if there is any reasonable possibility that the defect can be cured by amendment. (*Careau & Co.* v. *Security Pacific Business Credit, Inc.* (1990) 222 Cal.App.3d 1371, 1387 [272 Cal.Rptr. 387].) ▮ No such possibility exists here, for matters subject to judicial notice show that the first amended complaint cannot be amended to overcome the bar of the statute of limitations.

## DISPOSITION

The judgment of dismissal is affirmed.

Woods (Fred), J., concurred.

**JOHNSON, J.**—I respectfully dissent.

This is an unusual case factually. Here a lawyer's advice first saved her client some $50,000 in insurance premiums, then later cost the client roughly five times that amount in settlement costs and legal fees. The majority

---

[3]The dissent foresees a veritable "parade of horribles" in the wake of our conclusion that plaintiff's legal malpractice action is barred by limitations. The concerns expressed in the dissenting opinion are in the realm of speculation and therefore require no response.

and I differ over whether the client's cause of action accrued when he first had to employ a lawyer to defend against the lawsuit the insurance policy would have covered—at the cost of the $50,000 premium—or only when the expense of resolving the lawsuit exceeded the premium amount.

After oral argument in this case the California Supreme Court filed its opinion in *Laird* v. *Blacker* (1992) 2 Cal.4th 606 [7 Cal.Rptr.2d 550, 828 P.2d 691]. This case held the limitations period for legal malpractice cases does not commence until "a client suffers an adverse judgment or order of dismissal [at the trial court level] in the underlying action on which the malpractice action is based." (*Id.*, at p. 609.) If that principle were followed in this case the majority would hold Dr. Sirott had filed his legal malpractice action within the statutory period. For, in the instant case, there was no "adverse judgment" in the underlying medical malpractice action until January 3, 1990, when Dr. Sirott was forced to pay $230,000 to settle that action. Dr. Sirott filed his legal malpractice action only a few months later, well within the statute of limitations.

The majority opinion, however, pushes the commencement of the limitations period much earlier in the underlying litigation. Rather than waiting until the underlying medical malpractice action has terminated adversely to the client at the trial court level, the majority opinion would have the statute of limitations begin running on the legal malpractice case when the client first hires a second lawyer to work on the underlying action. There is a very good reason for concluding appellant's cause of action had not accrued until January 3, 1990, when he found it necessary to agree to pay out $230,000 in order to settle the medical malpractice claim. Dr. Sirott did not suffer any "actual injury" until that date.[1]

The defendant in the present case advised her client, Dr. Sirott, not to pay $50,000 for tail coverage insurance. But for defendant's advice, plaintiff would have spent $50,000 in insurance premiums that he instead was able to retain in his bank account. It is true that, because of this same advice, Dr. Sirott was required to employ new counsel at his own expense when someone filed a medical malpractice claim against him. Had the doctor paid the tail coverage premium the insurance company presumably would have employed a lawyer to provide that defense. Because he had not, plaintiff doctor had to withdraw some of the $50,000 in premium savings from his

---

[1]The majority appears to treat the proceeding to determine whether Dr. Sirott had "tail coverage" as the "underlying action" for purposes of *Laird* v. *Blacker*. However, it is apparent Dr. Sirott at most sustained a "contingent injury," not an "actual injury," when he lost in that proceeding. Unless and until the contingency occurred—the successful prosecution of a medical malpractice action against him—the injury was not real and thus not "actual."

bank account to pay this second lawyer to defend him. This expense, however, never exceeded the $50,000 insurance premium plaintiff would have been required to pay had he not followed defendant lawyer's original advice and, instead, purchased the tail coverage. If the only item Dr. Sirott had been required to pay was the second lawyer's legal fees, his cash balance would have remained higher than if he had not received and followed defendant's legal advice.

The earliest date on which the plaintiff doctor could have claimed he suffered actual damages as a result of appellant's advice was the date of the mandatory settlement conference on January 3, 1990. For, it was at this mandatory settlement that Dr. Sirott's new counsel advised him he would have to pay $230,000 to settle the action. At this point, for the first time plaintiff's costs exceeded what he would have been required to pay had he not followed defendant's advice. Until that time, however, Dr. Sirott did not know whether he would be required to pay any money at all to the medical malpractice plaintiffs. Nor did he know whether any payment he was required to make would exceed the $50,000 insurance premium he had avoided by following defendant's advice. Thus, until the January 3, 1990, settlement conference the losses the plaintiff doctor incurred as a result of following defendant lawyer's advice did not exceed the savings he experienced as a result of that advice.

Consequently, until the January 3 settlement conference Dr. Sirott was not in a position to prove an essential element of legal malpractice: that actual damages had occurred. Until the plaintiff doctor was required to make a settlement payment in order to obtain a dismissal of the medical malpractice claim against him, the possibility remained he would not have to pay out anything beyond legal fees to his second lawyer. Even if he had to pay something to the malpractice plaintiffs, the possibility remained this payment combined with the second lawyer's legal fees would be less than the $50,000 he had saved in insurance premiums by following defendant lawyer's advice. Consequently, plaintiff doctor did not suffer "actual damages" until the date of the settlement conference when he was required to pay substantially more than $50,000 to settle the medical malpractice action.

Because appellant's legal malpractice cause of action did not accrue until plaintiff doctor suffered actual injury on the date of the settlement conference—January 3, 1990—the statue of limitations did not begin running on the claim until that date. Consequently, the limitations period did not expire until a year later. The complaint was filed well within that period and, thus, the trial court should have rejected the statute of limitations defense. For these reasons, I would reverse the judgment dismissing appellant's malpractice claim.

I am concerned the majority opinion fosters a dangerous, wasteful notion. If this precedent is followed, it seems there will only be one logical course for clients to pursue—to file a legal malpractice lawsuit every time their lawyer makes a mistake which *might* cause them later harm. They can't wait to see whether another lawyer can avoid or mitigate the loss *at the trial court level*. No, the moment they have to pay someone to attempt to cure the problem, they had better file a malpractice action. Otherwise, should counsel fail in avoiding the loss, the clients will find the legal malpractice remedy is foreclosed, too, because the statute of limitations has been ticking ever since they started trying to save the situation.

Under the rationale of the majority opinion clients can't even wait to see if a lawyer's advice will turn out to have conferred a net gain rather than a net loss. The limitations period begins ticking the moment they expend any money attempting to prevent the gain from becoming a loss. So, if they hope to preserve their legal malpractice claim, clients often will be required to file the malpractice lawsuit before they even know whether they have succeeded in preserving a net gain (or avoiding a net loss) from their lawyer's advice.

The majority opinion may provide some lawyers, like the defendant firm in this case, with a windfall. These fortunate attorneys will be able to wiggle out of the malpractice lawsuits brought against them without confronting the merits. A statute of limitations defense will rescue them because their clients made the mistake of waiting around to find out if their lawyer's error might turn out to be irrelevant or even helpful, on balance, before filing suit. So in the short run the majority's decision is bad for clients but good for lawyers.

In the long run, however, there is reason to expect the rule the majority opinion adopts will hurt lawyers and the judicial system, as well as clients. (The majority opinion characterizes what follows as a "parade of horribles" based on speculation. [Maj. opn., *ante*, at p. 930, fn. 3.] Naturally, I consider it instead to be a reasonable forecast based on rational factors and common assumptions about human nature—the very sort of analysis of deterrence, incentives, etc. and their probable effects which underlies many legal rules, if not most. Other people—and possibly the future—will have to judge the soundness of the forecast.)

In any event, unless we assume clients and the legal malpractice bar remain ignorant of the rule embodied in the majority opinion it seems reasonable to forecast this rule will only encourage clients and their advisers to adopt a "hair trigger" approach to their lawyers' possible malpractice. Don't wait to see whether the problem can be cured or minimized *at the trial level*. Don't even wait to see if what might be viewed as bad advice actually

turns out to have made you a net winner. File that malpractice lawsuit and file it *now*. Otherwise the statute of limitations clock will tick away and you'll be without recourse if and when your efforts to prevent or minimize the harm ultimately fail. Thus, the only rational course open to clients is to file the malpractice suit shortly after the lawyer errs and without regard to whether the error may be curable or whether it may turn out to have made them net winners.

I am concerned the "hair trigger" approach the majority opinion fosters is bad for *clients* because it requires them to proceed with two lawsuits at a time. Worse, it requires them to urge inconsistent positions in these two suits. In the underlying lawsuit where they are attempting to cure the lawyer's mistake, the clients must attempt to convince the court what their lawyers did or advised was not error (or at least not erroneous enough to deny the clients their legal rights). Simultaneously, in the legal malpractice case, these same clients must attempt to prove what their lawyers did or advised indeed was error. There is the possibility of inconsistent verdicts. More likely, clients may end up "winning" a finding in the legal malpractice lawsuit which will constitute collateral estoppel against their position in the underlying lawsuit—or vice versa.[2]

At the same time, these "hair trigger" lawsuits are bad for *lawyers* because there probably will be many more malpractice suits filed. It is only reasonable to anticipate clients and their advisers will feel compelled to file early and often in order to preserve their rights while they learn whether they can avoid any problems their lawyers' potential malpractice may have caused or whether it actually left them better off than they otherwise would be. Thus, it seems rational to forecast lawyers will find themselves forced to defend against many cases which would not have been filed if the clients were only allowed to wait to see if they really suffered a net loss because of the lawyer's mistake.

Finally, these "hair trigger" malpractice suits are likely to add a further burden to the *judicial system* as they clutter the dockets with many cases that will eventually disappear. Sometime during the process—often later rather

---

[2]Apparently I am not alone in this concern. Someone with a fair amount of experience in the California judicial system has noted the same problem. "It is impractical to require a client simultaneously to pursue two lawsuits: a malpractice action and an appeal of right." (dis. opn. of Mosk, J., in *Laird* v. *Blacker, supra,* 2 Cal.4th 606, 627.) Here, however, the "impracticality" is even greater. Under the majority opinion in this case clients will be compelled to pursue simultaneously two inconsistent lawsuits in the very same trial court. Depending on the draw, they could even find themselves before the same judge—in law and motion, "fast track," or the "only judge in town" in a rural area—arguing out of two sides of their mouths as to the erroneousness and consequences of their attorneys' advice.

than sooner—it will become apparent the lawyer's malpractice did not actually cause the client a net loss, and certainly not one worthy of continuing to pursue the lawsuit.[3] Yet while they remain on the dockets these cases will be absorbing judicial resources as they proceed through the usual litigation steps—demurrer, discovery, this motion and that, this conference and that. Only when the parallel action in which the client is striving to cure or mitigate the lawyer's apparent error finally succeeds will these clients feel safe in dismissing their malpractice cases. In the meantime the judicial system will have squandered its limited time and resources on lawsuits which were, in any reasonable sense, premature.

Until January 3, 1990, Dr. Sirott's legal malpractice case was, in any reasonable sense, premature. When it matured he moved in a timely fashion to file suit. In my opinion, he should not be punished—through dismissal—for having acted in such a rational manner, one which is in the best interests of clients, the legal profession, and the judicial system, alike.

A petition for a rehearing was denied June 10, 1992. Johnson, J., was of the opinion that the petition should be granted.

---

[3]Legal malpractice cases pose statute of limitations problems which are different in kind from other forms of malpractice or other forms of litigation in general. More often than not, the lawyer's malpractice affects a case in litigation or, at the least, is curable only through litigation. Thus, any malpractice lawsuit almost inevitably must be filed in the same court which did hear or is hearing the litigation implicated in the lawyer's initial alleged act of malpractice. This is no particular problem when the underlying lawsuit has been terminated in that court. But it does create the problems described above when the underlying litigation is still ongoing at the time the malpractice lawsuit is filed.

These problems do not arise in other forms of litigation because the underlying injury does not arise out of litigation nor is it "cured" through litigation. To illustrate, consider a medical malpractice case. If a surgeon leaves a sponge in the patient's body during an operation, the attempts to cure or mitigate that malpractice occur in the operating room, not the courtroom. So any medical malpractice lawsuit which may be filed does not run afoul of an ongoing piece of litigation which the malpractice victim hopes will cure or mitigate the underlying medical problem created by the surgeon's mistake. The patient is not forced to take inconsistent positions in the same forum in the medical malpractice action as he or she would in a legal malpractice action filed while efforts were still ongoing in the courts to remedy or neutralize a lawyer's analogous mistakes. Consequently, telling legal clients they must file their legal malpractice actions while the underlying lawsuit is still underway and before they even know whether their lawyer's allegedly erroneous advice has made them net losers or net winners has far different consequences not only for those clients but for the integrity of the legal system than would a similar requirement in the medical malpractice area or other substantive areas of the law.

If the courts are not going to be sensitive to these problems, the Legislature should. The present trend of decisions—particularly as extended by the majority opinion in the instant case—is leading us in a direction I doubt the lawmakers would have intended had they foreseen the term "actual injury" would be construed as it has.