Filed 10/18/22  Flint v. Trope CA2/7

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION SEVEN

| | |
|---|---|
| MICHAEL FLINT, | B313081 |
| Plaintiff and Appellant, | (Los Angeles County Super. Ct. No. 19STCV09519) |
| v. | |
| KONRAD TROPE et al., | |
| Defendants and Respondents. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, David Sotelo, Judge.  Affirmed.

The Milner Firm and Timothy V. Milner for Plaintiff and Appellant.

Klinedinst, Dan Lawton and Mark M. Imada for Defendants and Respondents Konrad Trope and Trope Law Group, P.C.

—————————————

Michael Flint, represented by Konrad Trope, sued Pamela Koslyn, Flint's former tenant and attorney. The matter was ordered to arbitration; Trope withdrew; the arbitrator awarded Koslyn $87,136.42 in fees and costs as the prevailing party; and the superior court confirmed the award. (See *Flint v. Koslyn* (June 16, 2020, B289997) [nonpub. opn.].)

Flint then sued Trope and his law firm, Trope Law Group, P.C., (collectively Trope) for malpractice. The trial court sustained Trope's demurrer without leave to amend and entered a judgment of dismissal, ruling the lawsuit was time-barred because Flint had sustained actual injury no later than February 28, 2018—more one year before he filed his complaint—when the superior court granted Koslyn's petition to confirm the adverse arbitration award. On appeal Flint argues there was no actual injury and the one-year limitations period of Code of Civil Procedure section 340.6, subdivision (a), (section 340.6(a)) did not begin to run until March 22, 2018 when the trial court entered its judgment confirming the award. Therefore, Flint contends, his complaint, filed March 21, 2019, was timely. We affirm.

**FACTUAL AND PROCEDURAL BACKGROUND**

1. *Flint's Litigation with Koslyn*

The underlying facts are undisputed. Flint and Koslyn, a lawyer, had a written office lease/legal representation agreement. Koslyn agreed to sublet an office in Flint's leased suite; and Flint, in turn, agreed to retain Koslyn for certain legal work and to compensate her at a reduced hourly rate to be credited toward Koslyn's rent obligation. Legal work by Koslyn for Flint that was not used as a credit to her rent obligation would be billed at a higher hourly rate. The parties' agreement contained an arbitration provision.

On December 31, 2014 Flint, represented by Trope, sued Koslyn in Los Angeles Superior Court for breach of contract, monies due and owing and breach of fiduciary duty. Flint alleged Koslyn owed him approximately $30,000 for rent and also alleged Koslyn had represented him in a transactional matter in which Jason Dauman was an adverse party and thereafter breached her fiduciary duty to Flint as a former client by representing Dauman in a lawsuit against Flint. Koslyn petitioned to compel arbitration of the parties' dispute. The trial court granted the petition.

Trope moved to be relieved as Flint's counsel while the arbitration was pending. The motion was granted on April 28, 2017. Flint remained unrepresented for several months and then retained Kevin Hart in June 2017 to represent him in the proceedings.

The arbitrator issued her interim award with findings on October 19, 2017, concluding Koslyn owed Flint only $2,000 in rent and had not otherwise breached the parties' agreement. The arbitrator also found that Koslyn had not committed legal malpractice in her representation of Flint and had not breached her fiduciary duty by representing Dauman in litigation against Flint subsequent to her representation of Flint. The arbitrator found that Koslyn had prevailed on 75 percent of the claims on the contract and therefore was the prevailing party in the arbitration for purposes of Civil Code section 1717, subdivision (b)(1). Koslyn was awarded $84,702.80 in allowable fees, $4,433.62 in allowable costs, less $2,000 due to Flint, for a total award of $87,136.42. The arbitrator's final award was issued December 20, 2017.

3

Koslyn petitioned to confirm the arbitration award on January 30, 2018. Represented by yet another lawyer, Jay Smith, Flint filed a petition to vacate or correct the award on February 26, 2018. At the hearing on February 28, 2018 the trial court granted the petition to confirm the award and ordered Koslyn to prepare a proposed judgment. The court signed and filed the judgment on March 22, 2018. We affirmed the judgment on appeal. (*Flint v. Koslyn*, *supra*, B289997.)

2. *The Malpractice Action, Demurrer and Dismissal*

On March 21, 2019 Flint, representing himself, sued Trope for breach of contract, professional negligence, negligent infliction of emotional distress and intentional infliction of emotional distress. Flint alleged Trope had moved to be relieved as his counsel in the *Koslyn* matter in April 2017, "citing 'undetermined' personal mental issues as the main reason for [Trope's] unexpected and irresponsible action," which Flint contended constituted both a breach of the parties' retainer agreement and professional negligence.

After identifying the December 20, 2017 final arbitration award, Koslyn's January 30, 2018 petition to confirm the award, Flint's February 26, 2018 petition to vacate or correct the award and the March 22, 2018 judgment confirming the award, the complaint alleged, "[N]one of the aforementioned Court actions would have taken place, or should have taken place, if [Trope] had not petitioned the Court to be relieved from the said case and subsequently resigned it, under questionable circumstances and for dubious reasons."

Trope demurred to the complaint on October 1, 2019, arguing each of the four causes of action was barred by the one-year statute of limitations applicable to legal malpractice actions

4

(§ 340.6(a).)[1]  With his demurrer Trope asked the court to take judicial notice of certain documents from the underlying case, including Koslyn's petition to confirm the arbitration award, the February 28, 2018 minute order granting the petition and the March 22, 2018 judgment.

In support of his contention Flint's complaint was time-barred, Trope argued the one-year limitations period of section 340.6(a) applied to each of the four causes of action, all of which were based on Trope's purported negligence in the performance of professional services, and was triggered when Flint retained Kevin Hart in June 2017 as successor counsel in the arbitration proceedings, thereby incurring legal fees; and, if not then, on October 18, 2017 when the arbitrator issued her interim award finding Koslyn was the prevailing party entitled to attorney fees (to be determined in further briefing); or on December 20, 2017 when the arbitrator issued her final award; or, at the latest, on February 28, 2018 when the trial court granted Koslyn's petition to confirm the arbitration award.

Although Flint had once again retained Jay Smith to represent him, he filed no opposition to Trope's demurrer.  The trial court on August 7, 2020, after granting Trope's request to take judicial notice, sustained the demurrer, ruling, pursuant to *Lee v. Hanley* (2015) 61 Cal.4th 1225, 1236-1237, that all of Flint's claims depended on proof that Trope had violated his professional duty to Flint by abandoning him when his motion to be relieved as counsel was granted and thus were subject to the

---

[1]     Trope also demurred on the grounds the complaint did not state sufficient facts to constitute intentional infliction of emotional distress and negligent infliction of emotional distress was not properly pleaded as a separate cause of action.

one-year limitations period in section 340.6(a), and that Flint had suffered actual injury at the latest on February 28, 2018 when the court confirmed the arbitration award—more than one year before Flint filed the instant lawsuit.[2]

Flint moved for reconsideration pursuant to Code of Civil Procedure section 1008, arguing the one-year limitations period did not begin until March 22, 2018 when the trial court entered its judgment confirming the arbitration award. The court denied the motion as untimely and for failure to identify any new facts or law as required by section 1008. Flint then sought relief under section 473, subdivision (b), arguing his counsel had failed to file an opposition to the demurrer because of calendaring error. The court granted this motion, permitting Flint to file opposition papers, and set another hearing date for the demurrer.

After further briefing and argument the court again sustained the demurrer without leave to amend, rejecting Flint's arguments his breach of contract action was governed by a four-year limitations period and he had suffered no actual injury until the March 22, 2018 judgment was entered. The court explained, citing *Jordache Enterprises, Inc. v. Brobeck, Phleger & Harrison* (1998) 18 Cal.4th 739, 743 (*Jordache*), that actual injury for purposes of starting the applicable limitations period occurs when the client suffers any loss or injury legally cognizable as damages in a legal malpractice action. Here, the wrongful act at

---

[2] The court separately sustained the demurrer to the cause of action for intentional infliction of emotional distress on the additional ground Flint's allegations that Trope improperly withdrew from representing him, requiring Flint to retain new counsel to represent him in the arbitration proceeding, without more, did not constitute extreme and outrageous conduct.

issue was Trope's withdrawal as Flint's counsel, the court ruled; and Flint knew about that act, as well as his actual injury, "when he retained his successor attorney in June 2017, and when the arbitrator issued interim and final awards against [Flint] in October and December 2017." At the very least, Flint allegedly suffered actual injury by February 28, 2018 when the court confirmed the arbitration award "because the award's confirmation impaired his legal rights and remedies."

The court filed its judgment of dismissal on March 25, 2021. Flint filed a timely notice of appeal.

## DISCUSSION

1. *Standard of Review*

A demurrer tests the legal sufficiency of the factual allegations in a complaint. We independently review the trial court's ruling on a demurrer and determine de novo whether the complaint alleges facts sufficient to state a cause of action or discloses a complete defense. (*Mathews v. Becerra* (2019) 8 Cal.5th 756, 768; *T.H. v. Novartis Pharmaceuticals Corp.* (2017) 4 Cal.5th 145, 162.) We assume the truth of the properly pleaded factual allegations, facts that reasonably can be inferred from those expressly pleaded and matters of which judicial notice has been taken. (*Evans v. City of Berkeley* (2006) 38 Cal.4th 1, 20; accord, *Centinela Freeman Emergency Medical Associates v. Health Net of California, Inc.* (2016) 1 Cal.5th 994, 1010; *Schifando v. City of Los Angeles* (2003) 31 Cal.4th 1074, 1081.)

A demurrer based on an affirmative defense is properly sustained when the face of the complaint and matters judicially noticed clearly disclose the defense or bar to recovery. (See *Favila v. Katten Muchin Rosenman LLP* (2010) 188 Cal.App.4th 189, 224; see also *Stella v. Asset Management*

7

*Consultants, Inc.* (2017) 8 Cal.App.5th 181, 191; *Marina Tenants Assn. v. Deauville Marina Development Co.* (1986) 181 Cal.App.3d 122, 130-132.) If "'the complaint's allegations or judicially noticeable facts reveal the existence of an affirmative defense, the "plaintiff must 'plead around' the defense, by alleging specific facts that would avoid the apparent defense. Absent such allegations, the complaint is subject to demurrer for failure to state a cause of action."'" (*Esparza v. County of Los Angeles* (2014) 224 Cal.App.4th 452, 459.)

We affirm the judgment if it is correct on any ground stated in the demurrer, regardless of the trial court's stated reasons (*Aubry v. Tri-City Hospital Dist.* (1992) 2 Cal.4th 962, 967; *Las Lomas Land Co., LLC v. City of Los Angeles* (2009) 177 Cal.App.4th 837, 848), but liberally construe the pleading with a view to substantial justice between the parties. (Code Civ. Proc., § 452; *Ivanoff v. Bank of America, N.A.* (2017) 9 Cal.App.5th 719, 726; see *Schifando v. City of Los Angeles*, *supra*, 31 Cal.4th at p. 1081.)

2. *Flint's Complaint Is Time-barred*

The elements of a cause of action for legal malpractice are the duty of the attorney to use such skill, prudence and diligence as members of the profession commonly possess and exercise; a breach of that duty; a proximate causal connection between the negligent conduct and the resulting injury; and actual loss or damage resulting from the professional's negligence. (*Coscia v. McKenna & Cuneo* (2001) 25 Cal.4th 1194, 1199; *Budd v. Nixen* (1971) 6 Cal.3d 195, 200; *Knapp v. Ginsberg* (2021) 67 Cal.App.5th 504, 525.)

8

With one exception not applicable here,[3] section 340.6(a) establishes the limitations period for a legal malpractice action: "An action against an attorney for a wrongful act or omission, other than for actual fraud, arising in the performance of professional services shall be commenced within one year after the plaintiff discovers, or through the use of reasonable diligence should have discovered, the facts constituting the wrongful act or omission, or four years from the date of the wrongful act or omission, whichever occurs first."[4] Section 340.6(a) further provides, "[T]he time for commencement of legal action shall not exceed four years except that the period shall be tolled during the

---

[3] Code of Civil Procedure section 340.6, subdivision (b), provides, "In an action based upon an instrument in writing, the effective date of which depends upon some act or event of the future, the period of limitations provided for by this section shall commence to run upon the occurrence of that act or event."

[4] As the trial court recognized, the time bar of section 340.6(a) "applies to claims whose merits necessarily depend on proof that an attorney violated a professional obligation in the course of providing professional services." (*Lee v. Hanley*, *supra*, 61 Cal.4th at pp. 1236-1237.) This generally includes claims for breach of contract, as well as tort claims, arising out of an attorney's provision of professional services. (See *Levin v. Graham & James* (1995) 37 Cal.App.4th 798, 805 [in action alleging wrongful act or omission of attorney arising out of performance of professional services, "whether the theory of liability is based on the breach of an oral or written contract, a tort, or a breach of a fiduciary duty, the one-year statutory period applies"].) On appeal Flint does not dispute that all his causes of action arise from the performance of Trope's professional services and, therefore, that section 340.6(a) applies to all of them.

time that any of the following exist:  [¶]  (1) The plaintiff has not sustained actual injury. . . ."

Flint does not dispute he discovered Trope's alleged wrongful act (Trope's withdrawal as counsel in the arbitration proceeding in April 2017) more than one year before he filed his malpractice action on March 21, 2019.  The only issue on appeal is whether Flint suffered actual injury within the meaning of section 340.6(a) prior to entry of the judgment confirming the arbitration award on March 22, 2018.

"Actual injury occurs when the client suffers any loss or injury legally cognizable as damages in a legal malpractice action based on the asserted errors or omissions. . . .  [S]ection 340.6, subdivision (a)(1), will not toll the limitations period once the client can plead damages that could establish a cause of action for legal malpractice."  (*Jordache, supra*, 18 Cal.4th at p. 743.)  "The fact of injury or damage need not be recognized or noticed by the plaintiff."  (*Britton v. Girardi* (2015) 235 Cal.App.4th 721, 733; accord, *Foxborough v. Van Atta* (1994) 26 Cal.App.4th 217, 227 ["[a]ctual injury must be noticeable, but the language of the tolling provision does not require that it be noticed"].)

In assessing whether an actual injury has occurred the Supreme Court has distinguished between "an actual, existing injury that might be *remedied or reduced* in the future, and a speculative or contingent injury that might or might not *arise* in the future."  (*Jordache, supra*, 18 Cal.4th at p. 754; see *Adams v. Paul* (1995) 11 Cal.4th 583, 589 (plur. opn. of Arabian, J.) ["[T]he *fact* of damage rather than the *amount* is the relevant consideration.  [Citation.]  In addition, the character or quality of the injury must be manifest and palpable"]; *Foxborough,* at p. 227 ["when malpractice results in the loss of a right, remedy, or

10

interest, or in the imposition of a liability, there has been actual injury regardless of whether future events may affect the permanency of the injury or the amount of monetary damages eventually incurred"].)

"[T]here are no short cut 'bright line' rules for determining actual injury under section 340.6. [Citations.] Instead, actual injury issues require examination of the particular facts of each case in light of the alleged wrongful act or omission." (*Jordache*, *supra,* 18 Cal.4th at p. 761, fn. 9.) "[D]etermining when actual injury occurred is predominantly a factual inquiry. [Citations.] When the material facts are undisputed, the trial court can resolve the matter as a question of law." (*Id.* at p. 751.)

In his complaint Flint alleged Trope's withdrawal from the case resulted in the arbitrator improperly awarding Koslyn attorney fees as the prevailing party and further alleged that none of the proceedings in the superior court to confirm or vacate the arbitration award "would have taken place, or should have taken place," but for Trope's malpractice. As held in *Jordache*, *supra*, 18 Cal.4th 739 and cases applying it, Flint's retention of counsel in an effort to set aside the adverse arbitration award, even if arguably "correctible" in superior court proceedings, constituted actual injury that started the one-year limitations period for his claims against Trope.

In *Jordache*, the leading case on the meaning of "actual injury," the defendant law firm had allegedly failed to advise its clients they had insurance coverage for the defense of a significant, long-running lawsuit. After replacing the original law firm for other reasons, the clients sued their liability insurers for $30 million in attorney fees and costs paid to defend the original litigation. That coverage action was ultimately settled

11

for $12.5 million, a compromise based at least in part on the potential success of the carriers' "late notice" defense to their contractual obligation to pay fees and costs for the underlying suit. (*Jordache, supra*, 18 Cal.4th at pp. 744-746.)

The clients then sued their original law firm for negligence, seeking to recover the additional $17.5 million in defense costs they felt should have been covered by insurance. The law firm argued the malpractice claim was time-barred, contending their former clients had sustained actual injury when they were required to pay defense costs in the underlying litigation, diverting investment funds that otherwise could have been used to earn profits, or when they lost the benefit of the insurance policies for which they had paid during the period before they tendered the defense of the underlying action to the insurance carriers. The clients responded they had not suffered actual injury until forced to settle for less than the full defense costs. The trial court granted summary judgment. The Court of Appeal reversed, concluding, "[W]hether [the law firm's] omissions impaired [the clients'] interests in the benefits of its insurance policies was contingent on the outcome of the [insurance coverage] action." (*Jordache, supra*, 18 Cal.4th at pp. 744-747.)

The Supreme Court reversed the appellate court in a comprehensive opinion, holding the clients had sustained actual injury within the meaning of section 340.6(a) by the time they had discovered (with the assistance of new counsel) their original law firm's negligence in not notifying their insurers of the underlying litigation: "By then, [the client] had lost millions of dollars—both in unpaid insurance benefits for defense costs in the [underlying] action and in lost profits from diversion of investment funds to pay these defense costs. As [the law firm]

12

asserts, these damages were sufficiently manifest, nonspeculative, and mature that [the client] tried to recover them as damages in its insurance coverage suits." (*Jordache, supra*, 18 Cal.4th at p. 752.) In addition, the Court explained, "[b]ecause the insurers could and National Union did assert an objectively viable 'late notice' defense to [the client's] claims, [the client] necessarily incurred additional litigation costs to meet that defense," an additional form of actual injury. (*Id.* at pp. 752-753.)

In light of *Jordache*'s holding and analysis, it is now beyond dispute that retention of new counsel and payment of attorney fees in an effort to correct or respond to a prior attorney's negligent actions constitutes actual injury for purposes of section 340.6(a). For example, this court in *Callahan v. Gibson, Dunn & Crutcher* (2011) 194 Cal.App.5th 557, 575 held the malpractice plaintiffs had sustained actual injury when they incurred legal fees to respond to claims based on the dissolution provisions in a limited partnership agreement they alleged had been negligently drafted by partnership counsel. Similarly, the court of appeal in *Truong v. Glasser* (2009) 181 Cal.App.4th 102, 114 held the plaintiffs "first sustained actual injury when they obtained and were obligated to pay new counsel to file a lawsuit seeking to escape the consequences" of their prior attorney's alleged negligence. And in *Bennett v. McCall (*1993) 19 Cal.App.4th 122, 126 the court concluded, "[A]ppellant knew about respondents' alleged negligence [in preparing the settlement agreement to resolve a dissolution action] by June 1986, and paid a $1,500 retainer to [new counsel] on March 5, 1987, to represent him in the dissolution action and rectify the alleged negligence of respondent[s]. Consequently, the court correctly determined that the statute of limitations began

13

running at the latest on March 5, 1987." (See also *Adams v. Paul, supra,* 11 Cal.4th at p. 591, fn. 5 (plur. opn. of Arabian, J.) ["Although expenditure of attorney fees or other costs in many instances clearly would be *sufficient* to constitute the requisite injury, nothing in the history of section 340.6(a)(1) or its decisional predicates suggests it is *necessary*. In some circumstances, the loss or substantial impairment of a right or remedy itself may constitute actual injury and may well precede quantifiable financial costs"]; *Crocier v. Chavos* (2012) 207 Cal.App.4th 1138, 1150 [attorney fees incurred in litigation as a result of prior attorney's alleged negligence constitutes actual injury].)

Flint's reliance on *Laird v. Blacker* (1992) 2 Cal.4th 606 and *Sirott v. Latts* (1992) 6 Cal.App.4th 923 to argue he suffered no actual injury until the superior court entered its judgment confirming the arbitration award is misplaced. To be sure, as Flint emphasizes, the Supreme Court in *Laird*—decided six years before *Jordache*—held "under section 340.6, the statute of limitations for legal malpractice actions commences on entry of adverse judgment or final order of dismissal." (*Laird*, at p. 615.) But the issue in *Laird* was whether an appeal of the adverse judgment on which the claim of malpractice was based extended the tolling period for filing the lawsuit, as the malpractice plaintiff contended. The Supreme Court concluded it did not and held the lawsuit was untimely.[5] As the court of appeal explained

---

[5] Laird's lawsuit alleging a script she wrote had been used as the basis for a successful television series without credit or compensation was dismissed for lack of prosecution in October 1981. Laird discharged her attorneys and, representing herself, filed an appeal, which she voluntarily dismissed in September

in *Hensley v. Caietti* (1993) 13 Cal.App.4th 1165, 1174, *Laird* "cannot reasonably be construed to have addressed the point whether events other than entry of an adverse judgment can satisfy the criteria of actual injury. . . . In *Laird* no issue was tendered whether some event other than the judgment or the occurrence of finality of the judgment sufficed as 'actual injury.'" (Accord, *Bennett v. McCall, supra*, 19 Cal.App.4th at p. 127; see *Adams v. Paul, supra*, 11 Cal.4th at p. 591, fn. 4 (plur. opn. of Arabian, J.) ["In *Laird*, the harm occurred *no later than* the loss of the underlying action, i.e., order of dismissal and entry of adverse judgment, due to the attorney's negligence during the course of litigation. [Citation.] The court did not address the question of whether it could have arisen earlier"].)

Moreover, when explaining its rationale for concluding Laird's lawsuit was time-barred, the Supreme Court stated Laird had "sustained actual injury when the trial court dismissed her underlying action and she was compelled to incur legal costs and expenditures in pursuing an appeal." (*Laird v. Blacker, supra*, 2 Cal.4th at p. 615.) Here, Flint similarly sustained actual injury well before March 22, 2018 when he retained new counsel and

1982. In May 1983 Laird filed a legal malpractice action against the attorneys who had represented her in the underlying action. The trial court denied a defense motion for nonsuit, rejecting the attorneys' argument section 340.6(a)'s one-year limitations period commenced when Laird's underlying action was dismissed and was not tolled by her appeal. The court of appeal reversed the judgment for Laird, holding she had sustained actual injury when she discharged her attorneys after her case was dismissed and judgment was entered against her. (*Laird v. Blacker, supra*, 2 Cal.4th at p. 610.) The Supreme Court affirmed the court of appeal's judgment. (*Id.* at p. 621.)

incurred legal costs in seeking to vacate or correct the adverse arbitration award.

This court's pre-*Jordache* decision in *Sirott v. Latts*, *supra*, 6 Cal.App.4th 923 is likewise unhelpful to Flint. The operative pleading in *Sirott* alleged the defendant lawyers negligently advised Dr. Sirott he did not have to pay his medical malpractice insurer a premium for tail medical malpractice coverage when he retired. Dr. Sirott followed that advice. Thereafter, he was sued for medical malpractice and retained counsel to represent him in that action at his own expense. Attorney fees for his representation were incurred, at the latest, on January 20, 1987, when his counsel demurred to the medical malpractice complaint. On August 7, 1987 an arbitration award was rendered that denied Dr. Sirott's attempt to reinstate his tail coverage and determined the insurer was not obligated to defend or indemnify Dr. Sirott in the medical malpractice action. On January 7, 1988 judgment was entered confirming the award. On January 11, 1990 Dr. Sirott paid $ 230,000 to settle the medical malpractice action. He sued his original lawyers on January 30, 1990. (*Id*. at pp. 926, 928.)

On appeal from the trial court's dismissal of his complaint after sustaining a demurrer without leave to amend, Dr. Sirott argued he had not sustained actual injury until he settled the medical malpractice action. Although ignored by Flint in his briefing, *Sirott* first held, "A client suffers damage when he is compelled, as a result of the attorney's error, to incur or pay attorney fees." (*Sirott v. Latts*, *supra*, 6 Cal.App.4th at p. 928.) Accordingly, we held Dr. Sirott sustained actual injury no later than January 20, 1987, more than three years prior to the filing of his legal malpractice action. (*Id*. at p. 929.)

16

In reaching this conclusion, we rejected as unsupported by any legal authority Dr. Sirott's argument (and that of our dissenting colleague) that, because the legal fees incurred were less than the cost of the premium for tail coverage, incurring fees as a result of the prior attorney's alleged negligence did not constitute actual injury. (*Sirott v. Latts*, *supra*, 6 Cal.App.4th at p. 929.) "In any event," we continued, "the complaint shows on its face that plaintiff suffered damages in another form more than one year before the present action was commenced." (*Ibid.*) In this alternate holding, the *Sirott* opinion explained Dr. Sirott's attempt to reinstate tail coverage "ended in failure on August 7, 1987, when an arbitration award was rendered which determined that plaintiff could not rescind his decision to be responsible for his own tail coverage and the insurer was not obligated to defend or indemnify him in the medical malpractice action. The award was confirmed by judgment entered January 7, 1988. On that date plaintiff suffered actual damage by the irretrievable loss of the right to tail medical malpractice insurance coverage—the very purpose for which plaintiff consulted defendants and the subject of their allegedly negligent advice." (*Ibid.*) Accordingly, the one-year statute of limitations began to run on that date. (*Sirott*, at p. 930.)

Unlike the argument advanced (and rejected) in *Sirott v. Latts*, *supra*, 6 Cal.App.4th 923, Flint does not contend the legal costs incurred as a result of Trope's alleged misconduct were offset by any benefits created by the alleged malpractice. The primary holding of *Sirott* thus fully supports the conclusion Flint's lawsuit was time-barred. Moreover, *Sirott*'s alternate holding, like the holding in *Laird v. Blacker*, *supra*, 2 Cal.4th 606, by finding that an event more than one year prior to the

17

filing of the lawsuit inflicted actual injury for purposes of section 340.6(a), cannot reasonably be read as precluding earlier events from also being so identified. Indeed, the *Sirott* decision did just that.

In sum, prior to the time the superior court entered its judgment confirming the arbitration award in favor of Koslyn, Flint's injuries, which included legal costs incurred in an attempt to remedy the consequences of Trope's withdrawal as counsel during the arbitration, were not speculative or contingent. "[S]peculative and contingent injuries are those that do not yet exist, as when an attorney's error creates only a potential for future harm. [Citations.] An existing injury is not contingent or speculative simply because future events may affect its permanency or the amount of monetary damages eventually incurred." (*Jordache*, *supra*, 18 Cal.4th at p. 754.)

Flint sustained actual injury more than a year before filing his lawsuit when he retained new counsel to correct the errors allegedly caused by Trope's withdrawal from the action against Koslyn. The trial court correctly ruled his claims were barred under section 340.6(a) and properly dismissed the action after sustaining the demurrer without leave to amend.

## DISPOSITION

The judgment is affirmed.  Konrad Trope and Trope Law Group, P.C. are to recover their costs on appeal.


PERLUSS, P. J.


We concur:


SEGAL, J.


FEUER, J.