Filed 7/25/23  Tsutsui Enterprises v. Anderson CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

| | |
|---|---|
| TSUTSUI ENTERPRISES, INC., | C095693 |
| Plaintiff and Appellant, | (Super. Ct. No. 34-2018-00229418-CU-PN-GDS) |
| v. | |
| MICHAEL J. ANDERSON, | |
| Defendant and Respondent. | |

Plaintiff Tsutsui Enterprises, Inc. (TEI), sued its former corporate attorney, defendant Michael J. Anderson, for legal malpractice and breach of fiduciary duty.  After TEI made its opening statement at trial, the trial court granted Anderson's motion for nonsuit on the ground that TEI could not prove its claims without expert testimony on the applicable standard of care.  TEI appeals, contending that it was error to grant the motion for nonsuit because the "common knowledge" exception to the general rule requiring expert testimony applies.  We disagree with TEI and affirm the judgment.

1

FACTUAL AND PROCEDURAL BACKGROUND

A.      *The facts*[1]

TEI is a small farming business established by the Tsutsui family. The business remained in the family and, eventually, Thelma Tsutsui took over the principal role at TEI. Thelma was assisted by her two sons, Donald Tsutsui and Fred Tsutsui. Donald, the elder son, was the operations manager, while Fred, the younger son, managed the field work. Thelma, Donald, and Fred served as the three members of TEI's board.

In the late 1980's, Thelma retired from TEI and stepped down from the board. Although TEI's bylaws required the board to have three members, TEI's attorney, Anderson, did not advise Donald or Fred of this requirement. After Thelma retired, Donald and Fred remained on the board as president and vice president, respectively, but they did not choose a third board member. At the time of Thelma's retirement, TEI owned two pieces of property. The first parcel, "County Road 24," included housing structures for workers, storage, a workshop, and an office for TEI business. The second parcel was a piece of farmland, which TEI leased to a larger entity for farming.

In 1997, Donald asked Anderson, as TEI's attorney, to prepare a stock purchase agreement (the agreement) meant to ensure that TEI would pass to subsequent generations, which he did. The agreement was binding on Donald, Fred, and their family members and heirs. It granted Donald 5,100 shares of TEI stock and granted Fred 4,900 shares. The agreement further addressed Donald and Fred's life insurance policies, which were owned by TEI and purchased for the express purpose of fulfilling the agreement. As relevant here, the agreement provided that in the event of Donald or Fred's death, TEI would use the insurance proceeds to purchase the decedent's stock from his estate. The stock purchase price was to be determined by TEI's accountant

---

[1]      We rely solely on facts drawn from the operative complaint and TEI's opening statement at trial. (See *Paul v. Layne & Bowler Corp.* (1937) 9 Cal.2d 561, 564.)

within 45 days of a request. If the insurance proceeds exceeded the purchase price, TEI would retain the excess insurance proceeds.[2]

While representing TEI, Anderson simultaneously represented Donald personally. In this role, Anderson created testamentary documents, including a trust, providing that Donald's estate would be passed to Donald's daughter, Michelle Uchiyama, upon his death.

On November 23, 2015, Donald passed away. This left Fred as the sole remaining director. However, Fred was unaware that TEI's bylaws granted him the authority to step in as president and appoint two new board members, and Anderson did not advise him of these bylaws. Accordingly, Fred took no action to do so.

In response to Donald's death, Fred's son, Daryl Tsutsui, who worked for TEI, initiated the stock buyout procedure delineated in the agreement. Specifically, Daryl asked Richard Kadoya, TEI's longtime accountant, to prepare the book value of TEI's shares of Donald's stock, which Kadoya determined to be approximately $62,000. This meant that once TEI purchased the stock with Donald's life insurance payment, the balance of approximately $487,000 from Donald's life insurance would be left for TEI. To facilitate TEI's purchase of Donald's shares, Daryl asked Anderson to make a claim under Donald's life insurance policy. However, around this same time, Donald's daughter Michelle, who was the successor trustee of Donald's trust, instructed Anderson to fire Kadoya. Anderson complied with Michelle's request and sent Kadoya a termination letter without informing Fred.

In January 2016, also without informing Fred, Anderson issued Donald's 5,100 shares of stock to Michelle. Michelle purchased the shares based on the market value of TEI's real estate, rather than the book value of the company as determined by Kadoya.

---

[2] As TEI's attorney, Anderson prepared minutes from meetings that did not occur. He fabricated theses minutes for approximately 12 years.

This gave Michelle a 51 percent stake in TEI. On January 26, 2016, Michelle used her majority status to appoint herself and her husband to TEI's board of directors without notice to Fred. They also designated themselves president (Michelle) and vice president (Michelle's husband) of TEI. Michelle then used the proceeds from Donald's life insurance, intended to go to TEI, to instead pay off TEI's and Donald's debts on the County Road 24 property.

In response to Michelle's actions, Fred filed a derivative suit against Michelle and her husband. Fred, unable to pay the attorney fees required to continue litigation, agreed to an "unfavorable" settlement in August 2017, the details of which are unclear from the record. The settlement appears to have provided for the buyout of Donald's shares of TEI's stock from Michelle based on the market value of TEI's property, rather than the value of the company. As a result of the settlement, Michelle sold TEI's property, which put TEI approximately $1 million in debt. Without its real property, and saddled with debt, TEI could no longer operate as a farm. Michelle resigned from TEI. TEI terminated Anderson from representing the corporation in August 2017.

B.    *Procedural history*

In March 2018, TEI filed this lawsuit against Anderson for breach of fiduciary duty and professional negligence. TEI alleged that Anderson breached his common law and fiduciary duties to TEI by failing to advise Fred of his rights upon Donald's death, including the right to appoint two board members, and by helping Michelle and her husband acquire control of TEI in violation of TEI's bylaws, allowing Michelle to improperly act as a shareholder and repudiate the agreement, failing to maintain TEI's minutes and hold corporate meetings, and disclosing corporate information without notice or consent, all to the detriment of TEI. TEI alleged that Anderson's breaches caused TEI to suffer damages by, in part, preventing TEI from retaining a fair portion of its assets, and by causing TEI to reach an unfavorable settlement in the resulting derivative suit.

4

The case proceeded to jury trial.  After TEI gave its opening statement, Anderson moved for nonsuit.  Anderson argued that because TEI would not have an expert at trial to testify on the standard of care, TEI could not prove duty, breach, or causation for either cause of action.  The trial court agreed with Anderson and granted the motion.  In doing so, it found that the "common knowledge" exception to the rule requiring expert testimony in malpractice actions did not apply in this case.  TEI appeals.

DISCUSSION

The sole question presented is whether the scope of Anderson's duty and his resulting breach were so clear from the facts of the case that expert testimony on the standard of care was not required.  TEI contends that expert testimony was not required because Anderson's negligence would be obvious to a layperson, and any potential questions regarding the scope of Anderson's duty could be addressed via jury instructions on California's Rules of Professional Conduct.  In response, Anderson contends this case does not fall within the common knowledge exception, as it presents complex issues regarding corporate matters, shareholder disputes, estate planning, trusts, and conflicts of interest, such that expert testimony was required.  We agree with Anderson.

I

*Motion for Nonsuit*

"A defendant is entitled to a nonsuit if the trial court determines that, as a matter of law, plaintiff's evidence does not permit a jury to find in plaintiff's favor."  (*Unigard Ins. Group v. O'Flaherty & Belgum* (1995) 38 Cal.App.4th 1229, 1234.)  Code of Civil Procedure section 581c, subdivision (a)[3] provides that a defendant may move for nonsuit after a plaintiff has presented his or her opening statement.  " 'The standard of review for a nonsuit after [the] conclusion of the opening statement is well settled.  Both the trial

---

[3]     Undesignated statutory references are to the Code of Civil Procedure.

5

court in its initial decision and the appellate court on review of that decision must accept all facts asserted in the opening statement as true and must indulge every legitimate inference which may be drawn from those facts. [Citations.]' " (*Galanek v. Wismar* (1999) 68 Cal.App.4th 1417, 1424.) "Such judgment will be affirmed if from all the facts alleged in the complaint and stated by counsel and all the favorable inferences to be deduced therefrom, it is plainly apparent that a case cannot be maintained by the plaintiff. [Citation.]" (*Paul v. Layne & Bowler Corp., supra*, 9 Cal.2d at p. 564.)

II

*Analysis*

Plaintiff alleges claims of legal malpractice and breach of fiduciary duty. " 'In civil malpractice cases, the elements of a cause of action for professional negligence are: "(1) the duty of the attorney to use such skill, prudence and diligence as members of the profession commonly possess; (2) a breach of that duty; (3) a proximate causal connection between the breach and the resulting injury; and (4) actual loss or damage. [Citations.]" [Citation.]' [Citations.]" (*Blanks v. Seyfarth Shaw LLP* (2009) 171 Cal.App.4th 336, 356-357.) Similarly, to prove breach of fiduciary duty, a plaintiff must show "(1) the existence of a fiduciary relationship, (2) its breach, and (3) damage proximately caused by that breach." (*Mendoza v. Continental Sales Co.* (2006) 140 Cal.App.4th 1395, 1405.)

"As a general rule, the testimony of an expert witness is required in every professional negligence case to establish the applicable standard of care, whether that standard was met or breached by the defendant, and whether any negligence by the defendant caused the plaintiff's damages. [Citation.]" (*Scott v. Rayhrer* (2010) 185 Cal.App.4th 1535, 1542; *Unigard Ins. Group v. O'Flaherty & Belgum, supra*, 38 Cal.App.4th at p. 1239.) However, there is a narrow "common knowledge" exception to this rule. " '[W]here the failure of attorney performance is so clear that a trier of fact may find professional negligence unassisted by expert testimony, then expert testimony is

6

not required.' [Citations.] In other words, if the attorney's negligence is readily apparent from the facts of the case, then the testimony of an expert may not be necessary." (*Goebel v. Lauderdale* (1989) 214 Cal.App.3d 1502, 1508.)

There are two primary legal malpractice cases that apply the common knowledge exception. In one, an attorney advised his client to take actions that violated the Penal Code (*Goebel v. Lauderdale, supra*, 214 Cal.App.3d at pp. 1508-1509), and in the other, the attorney failed to perform basic research on a settled area of law prior to advising his client. (*Stanley v. Richmond* (1995) 35 Cal.App.4th 1070, 1093-1094.) "These cases demonstrate a high standard for legal malpractice matters that may bypass the need for expert testimony on the standard of care. This exception only applies to malpractice that is 'so clear' as to be unmistakable, or obvious malpractice resulting from an utter failure to undertake 'basic research.' " (*O'Shea v. Lindenberg* (2021) 64 Cal.App.5th 228, 238 [analyzing *Goebel* and *Stanley* to conclude that malpractice case where attorney only briefly examined a witness, allowed testimony via telephone, and failed to explain inconsistencies in a declaration and " 'apparent forgeries' " required expert testimony] (*O'Shea*).)

In other professional negligence cases, courts have found expert testimony unnecessary where the negligence was similarly self-evident. For example, *Flowers v. Torrance Memorial Hospital Medical Center* (1994) 8 Cal.4th 992 references the classic case in which a doctor left a scalpel in a patient's body following surgery. (*Id*. at p. 1001.) And in *Ryan v. Real Estate of Pacific, Inc.* (2019) 32 Cal.App.5th 637, a real estate broker failed to disclose a planned development on neighboring property that would adversely affect the value of the plaintiff's property. (*Id*. at pp. 645-647.)

Unlike those cases, here, the questions regarding the scope of Anderson's duty to TEI, whether the duty was breached, and any resulting damages, are not so "clear and uncontroversial" (*Ryan v. Real Estate of Pacific, Inc., supra*, 32 Cal.App.5th at p. 646) that the rarely used exception applies. The scope of duty owed by Anderson to a

corporation, as its corporate attorney, is not obvious to a layperson. More specifically, without an expert, the jury would be left to determine nuanced questions such as whether Anderson had a unilateral duty to counsel TEI to comply with the corporate bylaws, to ensure TEI complied with the agreement, or to advise and assist Fred in appointing replacement directors. It would further be tasked with deciding complicated issues of breach, such as whether Anderson breached his duties to TEI by permitting Michelle, as the trustee to Donald's estate, to acquire Donald's stock, and by failing to involve himself when Michelle and her husband appointed themselves to the board and conducted corporate business. Thus, Anderson's actions (and inactions) are not examples of "unmistakable malpractice," but rather are akin to "tactical decisions" and "judgment calls" that require expert testimony to compare to the applicable standard of care. (See *O'Shea, supra*, 64 Cal.App.5th at p. 238.) Indeed, these questions of duty and breach are particularly thorny here, where Anderson purported to also represent Donald's estate, and where Michelle was the beneficiary of Donald's trust.

Further, whether Anderson caused TEI's damages is also not readily apparent. TEI argues that Anderson facilitated Michelle's takeover of TEI through his conduct, resulting in a settlement providing for the buyout of Donald's stock based on an unfavorable metric, plus the liquidation of TEI's real estate assets at a financial loss to TEI. It is not obvious whether, and to what extent, Anderson's alleged breaches caused these claimed damages. These questions are made murkier still because Michelle, not Anderson, did many of the alleged wrongful acts that TEI contends caused its damages, though perhaps with Anderson's assistance or acquiescence. Accordingly, this is not a case where "the alleged malpractice is so utterly egregious and obvious that no expert testimony is needed." (*O'Shea, supra*, 64 Cal.App.5th at p. 237.)

Nor could TEI have remedied its lack of expert testimony by asking the trial court to instruct the jury on various California Rules of Professional Conduct. Such instructions are only useful as a proxy for expert testimony where, again, the attorney's

8

duty and breach are manifest. (*Stanley v. Richmond, supra*, 35 Cal.App.4th at pp. 1086-1087.) As discussed, this is not such a case.

As TEI failed to retain an expert to testify at trial, TEI could not prove its claims for legal malpractice and breach of fiduciary duty as a matter of law had the trial proceeded. We accordingly affirm the grant of nonsuit. We reach this conclusion with the recognition, as TEI asserts on reply, that nonsuits are disfavored, particularly following opening argument. However, TEI's lack of proof could not be cured by anything but expert testimony on the standard of care. With this glaring evidentiary gap, there is no doubt that TEI would have been unable to prove its claims at trial.

The nonsuit was thus properly granted.

### DISPOSITION

The judgment is affirmed. Anderson is entitled to his costs on appeal. (Cal. Rules of Court, rule 8.278(a)(1).)


                                                KRAUSE          , J.


We concur:



        EARL            , P. J.



        ROBIE           , J.

9